UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

   Plaintiff,

v.

ELIJAH CHAPPELL,

   Defendant.

_____/

Case No. 23-cr-20601

Hon. Sean F. Cox
United States District Court Judge

## MEMORANDUM OPINION & ORDER DENYING WITHOUT PREJUDICE DEFENDANT'S MOTION IN LIMINE (ECF No. 24)

On the evening of May 20, 2023, several individuals called 911 to report hearing gunshots and seeing a man lying in the street near a residence in Detroit, Michigan. Police quickly arrived on the scene and their body-worn cameras captured several eyewitness' statements. Police arrested Defendant at that residence later that night and found guns and ammunition inside. Defendant then moved in limine to exclude the 911 callers' and eyewitnesses' statements from his upcoming trial for possessing a firearm and ammunition as a felon.

Trials are dynamic, and motions in limine "should only be granted if '[the] evidence [in question] is clearly inadmissible on all potential grounds.' In cases where that high standard is not met, 'evidentiary rulings should be deferred until trial so that questions of foundation, relevancy, and potential prejudice may be resolved in proper context.'" *Good v. BioLife Plasma Servs., L.P.*, 605 F. Supp. 3d 947, 955 (E.D. Mich. 2022) (alterations in original) (citation omitted) (quoting *United States v. Phillips*, 146 F. Supp. 3d 837, 841 (E.D. Mich. 2015)).

1

That standard was not met here, and the Court denied Defendant's motion without prejudice at a recent hearing. This memorandum opinion more fully explains the Court's reasoning.

**BACKGROUND**

The Government alleges that Defendant Elijah Chappell was involved in a domestic dispute one evening last May and that he stood outside a residence on Hartwell Street in Detroit, Michigan, and fired a gun at approximately 9:30 P.M. that night. Several individuals called 911 to report hearing gunshots and seeing a man lying in the street. When police arrived on the scene, they spoke with a group of children and a man who reported similar circumstances. The responding officers then heard what they believed to be gunshots ring out.

Police subsequently established a perimeter around the Hartwell Street residence and saw Defendant walking around inside. Police unsuccessfully tried to talk to Defendant over a loudspeaker and ultimately declared him to be a barricaded gunman. Police eventually breached the residence and Defendant surrendered roughly two hours after police had arrived on the scene.

A federal grand jury indicted Defendant Elijah Chappell for possessing a firearm as a felon in October 2023,[1] he pled not guilty, and this case is set for trial. Defendant then moved in limine to exclude certain evidence. (ECF No. 24). Specifically, Defendant challenged Government's proposed exhibits 1–4, which are audio recordings of four 911 calls made by individuals near the Hartwell Street residence on the night of Defendant's arrest. Defendant also challenged Government's proposed exhibits 5 and 6, which are video recordings taken from responding officers' body cameras that same night.[2]

---

[1] 18 U.S.C. § 922(g)(1).
[2] The Court reviewed Exhibits 1–6. The Government also provided transcripts of relevant portions of Exhibits 1–6 and Defendant does not challenge their accuracy. The Court quotes from those transcripts below.

**I.      Exhibit 1**

Exhibit 1 is an audio recording of a 911 call that began at 9:36 P.M.  The caller states that there is an emergency at the Hartwell Street residence involving a suspect that is "light skinned" with an "afro" who is wearing "a white shirt and some black pants."  (ECF No. 29-2, PageID.71).  The caller additionally states, "The man is drunk.  He's fighting all my momma kids.  He's got a gun, blowin' the gun, everything.  Please come down."  (*Id.*).

**II.     Exhibit 2**

Exhibit 2 is an audio recording of a 911 call that also began at 9:36 P.M.  The caller states that there is an emergency at the Hartwell Street residence involving a suspect who is "tall," "light-skinned," "black," "skinny," and has "a afro."  (ECF No. 29-3, PageID.73, 74).  The caller additionally states that the suspect is their neighbor and is "shooting a gun on the side of the house."  (*Id.* at 73).

**III.    Exhibit 3**

Exhibit 3 is an audio recording of a 911 call that began at 9:41 P.M.  The caller, a child, states that they need police at the Hartwell Street residence because "[h]e's shootin' our house."  (ECF No. 29-4, PageID.76).  The caller additionally states, "[H]e got mad, and he started putting his hands on her," and, "He's 42 and she's 13.  And he's putting his hands on her and he's got the gun, fighting his brother, and shooting out house up and everything."  (*Id.*).

**IV.    Exhibit 4.**

Exhibit 4 is an audio recording of a 911 call that began at 9:42 P.M.  The caller states that there is an emergency at the Hartwell Street residence where "[a] guy is beating up a woman, I think."  (ECF No. 29-5, PageID.77).  The caller additionally states, "Whoever this is is layin' in the street.  And I think they was shooting a gun."  (*Id.*).  The caller further states that they heard five gunshots and that a person lay in the street near a burgundy Ford Flex with a white roof.

3

## V.     Exhibits 5 and 6

Exhibits 5 and 6 are two items of video footage record from responding officers' body cameras. They depict an interaction between police, several children, and a man that began when Detroit Police Department officer Hebner and other officers arrived at the Hartwell Street residence at 9:43 P.M. Throughout the interaction, a number of children shout about a woman named "Neveah."

A child identified as "J.S." states, "He's in the house," "He was drunk," and "[H]e started putting . . . his hands on her. And he started fighting everybody. When I say he was fighting everybody to get to her, he was fighting everybody. And he went to get the gun and started letting off bullets." (ECF No. 29-6, PageID.80, 81). J.S. also states, "And then he started socking his brother until he was on the floor," and "I don't know where he went, but I know he probably still in the house." (*Id.* at 81).

Then a man identified as Corliss Chappell tells officers that he was not shot, was not hit by a car, and had "no idea" what was wrong. (*Id.* at 82). Officer Hebner observes, "There's a lot of blood on you," and asks, "What happened tonight?" (*Id.*). Corliss responds, "Nothing, sir," and admonished the officers not to touch him. (*Id.*). Corliss then states, "I think I'm fine. I had an argument and after that I had some words," and "that's it." (*Id.* at 83). Another officer asked Corliss who he had argued with and Corliss responded, "Don't know." (*Id.*).

A child then states, "We don't know where he went. We don't know where he's at." (*Id.*). Officer Hebner asks, "Who is 'he?'" and J.S. responds, "We don't know. We just know his name is Elijah." (*Id.*). J.S. also states that "he" man may have gone "to the basement," and another child shouts, "Look inside the house!" (*Id.*).

Then, loud popping sounds can be heard, the children scream, and Officer Hebner shouts, "Shots fired, shots fired." (*Id.* at 84). Another officer states, "Everyone get away now." (*Id.*).

4

Officers then radio in that shots had been fired "[i]nside the building." (*Id.*). A voice on the officers' radios responds, "Alright, you got shots, we got shots fired inside the location. Shots fired inside the location." (*Id.*).

\* \* \*

Defendant's motion in limine was fully briefed and the Court heard oral argument on September 25, 2024. The Court denied Defendant's motion at that hearing and this memorandum opinion more fully explains the Court's reasoning.

## STANDARD OF REVIEW

This Court has the inherent power "to narrow the evidentiary issues for trial" and "eliminate unnecessary trial interruptions" by ruling on the admissibility of evidence in limine. *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013) (quoting *Bradley v. Pittsburgh Bd. of Educ.*, 913 F.2d 1064, 1069 (3d Cir. 1990)). But courts in this Circuit decline to exercise that power unless such evidence "is clearly inadmissible for any purpose." *Roche Diagnostics Corp. v. Shaya*, 679 F. Supp. 3d 588, 595 (E.D. Mich. 2023) (quoting *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004)).

## ANALYSIS

**I.     Exhibits 1–4**

Defendant argued that Exhibits 1–4 were clearly inadmissible for five reasons, but the Court was not persuaded. Defendant may renew any objection to Exhibits 1–4 at trial.

**A.     Hearsay**

*First*, Defendant argued that 911 callers' statements are inadmissible hearsay.[3] Assuming *arguendo* that those statements are hearsay, they appear to "describ[e] or explain[] an event or

---

[3] If the 911 callers' statements are hearsay, then they are technically hearsay within hearsay because those statements would be contained in audio recordings furnished by the Government. But Defendant did not challenge the admissibility of the recordings of the calls as such.

5

condition" and were "made while or immediately after the [callers] perceived [them]." Fed. R. Evid. 803(1). If this is right, then the 911 callers' statements would be admissible as present-sense impressions regardless of whether the callers are available to testify. *See Nanette v. California*, 572 U.S. 393, 400 (2014) (observing that "911 calls that would otherwise be inadmissible hearsay have often been admitted" as present-sense impressions). Defendant's hearsay challenge fails.

### B. Confrontation Clause

*Second*, Defendant argued that the introduction of the 911 calls in Exhibits 1–4 would violate his rights under the Confrontation Clause. The Confrontation Clause "prohibits the introduction of *testimonial* statements by a nontestifying witnesses, unless the witness is 'unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" *Ohio v. Clark*, 576 U.S. 237, 243 (2015) (emphasis added) (quoting *Crawford v. Washington*, 541 U.S. 36, 54 (2004)). Whether a statement is *testimonial* for Confrontation Clause purposes turns on "whether, in light of all the circumstances, viewed objectively, the 'primary purpose' of the conversation was to 'creat[e] an out-of-court substitute for trial testimony.'" *Id.* at 245 (alterations in original) (quoting *Michigan v. Bryant*, 562 U.S. 344, 358 (2011)).

The Sixth Circuit has identified four circumstances tending to show that a 911 call was *not* testimonial: (1) the caller "'was speaking about events as they were actually happening,' not describing events 'hours' after they occurred"; (2) the caller "'was facing an ongoing emergency,' prompting [them] to make 'a call for help against a bona fide physical threat'"; (3) the dispatcher "elicited statements . . . to be able to resolve the present emergency, rather than simply to learn . . . what had happened in the past"; and (4) the caller "frantic[ally]" responded to the dispatcher "in an environment that was not tranquil, or even . . . safe" as opposed to "respond[ing] calmly" to law enforcement in a safe environment. *United States v. Arnold*, 486

6

F.3d 177, 188 (6th Cir. 2007) (en banc) (emphases omitted) (fourth alteration in original) (quoting *Davis v. Washington*, 547 U.S. 813, 827 (2006)).

Here, the 911 callers reported hearing gunshots and pleaded with the dispatchers to send police as soon as possible. The callers additionally reported having seen an individual with a gun nearby and that another person lay in the street. And the dispatchers on all four calls asked no more than was necessary to ensure an adequate police response. As such, it would appear that the primary purpose of the challenged calls was not to create a substitute for the callers' trial testimony and that the Confrontation Clause does not require that Defendant be permitted to cross-examine those witnesses. Defendant's Confrontation Clause challenge fails.

### C. Relevance

*Third*, Defendant argued that "it is irrelevant what the 911 callers may have told the 911 operator unless that information was known to the officers at the time that they were dispatched to the scene." (ECF No. 24, PageID.44). This is incorrect. To prove that Defendant violated § 922(g)(1), "the government must demonstrate that [he] had control over the [firearm or ammunition], either actually or constructively." *United States v. Murphy*, 1078 F.3d 1199, 1207 (6th Cir. 1997).

The 911 callers state that they heard gunshots and saw a person with a gun near the Hartwell Street residence. Given that police later arrested Defendant at that residence and found a gun and ammunition inside, these statements seem probative of Defendant's possession of a gun and ammunition and would therefore be relevant regardless of what police officers knew when they arrived at the Hartwell Street residence. Defendant's relevance challenge fails.

### D. Best Evidence Rule

*Fourth*, Defendant invoked the best-evidence rule: "The best evidence available regarding what the police officers knew when they ultimately interacted at the scene will be their testimony." (ECF No. 24, PageID.45). This argument fails because, as discussed above, the 911

calls appear to be independently probative of Defendant's possession of a firearm and ammunition.

### E. Federal Rule of Evidence 403

*Fifth* and last, Defendant argued that the Court should exclude the 911 calls under Federal Rule of Evidence 403 because they would be substantially more prejudicial than probative. But "[t]estimony is not 'prejudicial' under Rule 403 simply because it provides powerful evidence that the defendant committed the charged crimes. Rather, the defendant must show that the evidence might lead the jury to convict for an *inappropriate* reason." *United States v. Harvel*, No. 23-5416, 2024 WL 3982679, at *15 (6th Cit. Aug. 29, 2024) (designated for publication).

According to Defendant, the 911 calls would lead a jury to inappropriately convict him "based on emotions instead of evidence." (ECF No. 24, PageID.45). But Defendant does not describe the content of the calls or explain why the danger of unfair prejudice is "substantial." Moreover, as discussed above, the 911 calls appear to be probative of Defendant's commission of the charged acts. Defendant's Rule 403 challenge fails.

## II. Exhibits 5 and 6

Defendant's challenges to Exhibits 5 and 6 are too vague to warrant consideration. Those exhibits record numerous statements by several individuals, but Defendant does not specify any statements that he believes are objectionable. The Court need not examine every statement in those exhibits that might be objectionable given that Defendant opted not to do so himself. Defendant may renew any objection to Exhibits 5 and 6 at trial.

### CONCLUSION & ORDER

The Court is not persuaded that Exhibits 1–6 are inadmissible for any purpose. Assuming the Government can lay a proper foundation, it seems likely that the 911 callers' and

eyewitnesses' statements would be admissible.  Defendant may renew any objection to these exhibits at trial, where the Court shall consider them "in proper context."  *Good*, 605 F. Supp. 3d at 955 (quoting *Phillips*, 146 F. Supp. at 841).  Accordingly, **IT IS ORDERED** that Defendant's Motion in Limine (ECF No. 24) is **DENIED WITHOUT PREJUDICE**.

**IT IS SO ORDERED.**

Dated:  September 27, 2024               s/Sean F. Cox
                                         Sean F. Cox
                                         U. S. District Judge

9